IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LOLA B. HARRIS,
      Plaintiff,

vs.                               Case No. 5:07cv44/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

I.      PROCEDURAL HISTORY

      Plaintiff applied for DIB on June 10, 2003 (Tr. 67–70).[1]  Her application was denied (Tr. 26–37), and she appealed the denial to an Administrative Law Judge (ALJ).  Administrative hearings were held on October 3, 2005 (Tr. 383–419) and January 12, 2006 (Tr. 420–32).  The ALJ found

_____

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on April 18, 2007 (Doc. 6).

that Plaintiff was "not disabled" in a decision dated August 25, 2006 (Tr. 14–25).  After the consideration of new evidence (Tr. 260–82), the Appeals Council denied Plaintiff's request for review on January 9, 2007 (Tr. 5–8).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.    FINDINGS OF THE ALJ

On August 25, 2006, the ALJ made several findings relative to the issues raised in this appeal (Tr. 16–25):

1)    Plaintiff meets the insured status requirements of the Act through December 31, 2006.

2)    Plaintiff has not engaged in substantial gainful activity (SGA) since March 28, 2003, the alleged onset date of her disability (20 C.F.R. §§ 404.1520(b), 404.1571 et seq.).

3)    Plaintiff has the following severe impairments:  osteoarthritis; status post diffuse large cell lymphoma in the neck with complete remission; status post bilateral volar wrist ganglion cyst which was excised; and lumbar degenerative disc disease (20 C.F.R. § 404.1520(c)).

4)    Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5)    Plaintiff has the residual functional capacity (RFC) to sit up to 6 hours in an 8-hour workday, stand 3 to 4 hours in an 8-hour workday, and lift 20 pounds occasionally and 10 pounds frequently.  Plaintiff can never climb, work at heights, or work around dangerous machinery.  Thus, Plaintiff retains the RFC to perform a range of sedentary to light work activity on a sustained basis.

6)    Plaintiff is capable of performing her past relevant work as a sewing machine operator and cashier/checker, as she previously performed those jobs.  This work does not require the performance of work-related activities precluded by Plaintiff's RFC (20 C.F.R. § 404.1565).

7)    Plaintiff has not been under a "disability," as defined in the Act, from March 28, 2003, through August 25, 2006, the date of the ALJ's decision (20 C.F.R. § 404.1520(f)).

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering her age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing SGA, she is not disabled.

2.      If the claimant is not performing SGA, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing SGA and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY[2]

A.    Personal/Employment History

Plaintiff testified at her hearing before the ALJ that she last worked in September 2001.  She stated that she stopped working to care for her father, who was sick, and she took care of him in her house until November 2002, at which time he was able to go home.  She testified that her father subsequently died in March 2004 at the age of 80.  She stated that she then intended to go back to work; however, she was diagnosed with cancer.  Plaintiff underwent about six months of chemotherapy, during which time her activities were extremely limited.

Plaintiff stated that she previously worked as a clerk and cashier in a small country grocery store for about two and a half years.  She stocked items near the register, took inventory and ordered groceries, and was required to lift up to ten pounds at this job.  Plaintiff stated that she had a stool and had the option of sitting or standing.  She stated that she sat a total of about five hours off and on during an eight-hour day.  Plaintiff testified that she previously worked as a sewing machine operator in a shirt factory for about twelve years.  This was a sedentary job, and it required her to lift two to three pounds frequently and five to six pounds occasionally.  Plaintiff testified that the job consisted of sewing buttons and cuffs on shirts.

Plaintiff testified that she cannot work because of severe pain.  She stated that she has fibromyalgia, as well as disc pain that goes from her right side into the abdomen, groin, and down the right leg.  Plaintiff testified that she has experienced this pain since about 2002, and her side pain has gone on for two years, worsening after the effects of her chemotherapy (Tr. 394).  She stated that her conditions make her feel fatigued, and in the morning when she gets up she does not feel rested.  She testified that she also has bladder problems and has to urinate quite frequently.  She stated that she can sit or stand one hour at a time and walk a half-block at a time.  Plaintiff stated that she can lift up to twenty pounds a couple of times a day.  She stated that she cannot climb stairs because it irritates her back, and she bends only if necessary.  Plaintiff testified that she can use her hands to manipulate small things.

---

[2]Unless otherwise noted, the information in this section is derived from the opinion of ALJ.

On a typical day, Plaintiff wakes up around 8:00 a.m. and eats cereal.  During an eight-hour day, she sits for about four hours, and stands or walks two to three hours, during which time she straightens the house, washes clothes, cooks supper, washes dishes, and occasionally vacuums.  She testified that she does these things a little at a time, resting intermittently.  Plaintiff stated that she takes naps on a daily basis for about thirty minutes.  She also reads and watches television during the day.  Plaintiff testified that she goes to Sunday school almost every Sunday and is usually there about two hours, but she can be there up to three or four hours.  She stated that she sometimes does yard work, but not often.  Plaintiff also stated that she drives, she shops for groceries about once a month, she does not visit anyone, and she is able to care of her personal needs.

B.       Relevant Medical History

Plaintiff was treated for a bilateral volar wrist ganglion cyst, which was removed in December 1998 by Steven Beranek, M.D., an orthopedic surgeon.  On January 5, 1999, Dr. Beranek reported that Plaintiff was being seen for follow up of her bilateral wrist ganglion cyst excision, and stated that examination of her wrists bilaterally revealed clean wounds that were dry and healing well.  Dr. Beranek informed Plaintiff that she was to continue activity as tolerated with a final recheck in four weeks.

On February 2, 1999, Dr. Beranek reported that an examination of Plaintiff reflected that she was doing fine with regard to her cyst excision; however, she had a new complaint, which was pain in her right shoulder in the subacromial region, aggravated with rolling over on the shoulder at night, but not particularly aggravated by heavy lifting or overhead work.  He stated that examination of Plaintiff's right shoulder revealed full symmetrical range of motion (ROM), positive impingement sign, good motor strength, and generalized subacromial tenderness.  He diagnosed Plaintiff with right shoulder impingement syndrome.

On December 23, 2002, Plaintiff presented to Dr. Beranek with complaints of pain in her right hip and buttock area that radiated down into her leg (Tr. 239).  An examination of Plaintiff's lumbar spine reflected decreased flexion, extension, rotational bending, and lateral bending.  Dr. Beranek stated that Plaintiff had some generalized tenderness and muscle spasm in the right side of the paraspinous muscles in the low back, but her hips revealed a full symmetrical ROM, although she had some pain in her sciatic notch on the right with internal rotation.  Dr. Beranek stated that

there was also tenderness in the sciatic notch that radiated down the leg.  Dr. Beranek reported that x-rays reflected degenerative disc disease at L5–S1.  Dr. Beranek's plan included sending Plaintiff to physical therapy for extension exercises and rehabilitation; he also wanted to obtain an MRI of her lumbar spine (Tr. 223–46).

On December 26, 2002, Plaintiff presented to Enterprise Therapy Center for an initial evaluation and therapy as directed by Dr. Beranek (Tr. 236–37).  At Plaintiff's therapy session three days later, she rated her pain as a "7" on a ten-point scale, and on January 2, 2003, she rated it as an "8" (Tr. 237).  The physical therapist noted that Plaintiff was taking pain pills regularly for pain, and the therapist assessed pain in the right lumbar region (*id.*).

On January 6, 2003, Plaintiff returned to Dr. Beranek after obtaining an MRI of the lumbar spine, which revealed degenerative disc disease with bulging discs at L4 and L5–S1 (Tr. 235).  Dr. Beranek noted that Plaintiff's lumbar spine examination remained unchanged from his previous examination.  Plaintiff was assessed with lumbar degenerative disc disease with muscle spasm. Plaintiff was prescribed Skelaxin and Percocet and was advised to discontinue physical therapy (*id.*). In mid-February 2003, Dr. Beranek again noted that Plaintiff's lumbar spine examination remained unchanged (Tr. 234).  Plaintiff was continued on Percocet and additionally prescribed Trazadone for depression (*see* Doc. 9 at 3).

Plaintiff was examined by Warren Rollins, M.D., on March 22, 2003, complaining of a swollen gland on the left side of her neck.  Dr. Rollins reported that Plaintiff had a past medical history significant for fibromyalgia and disc problems of the neck.  Upon examination, Plaintiff had a large lymph node present in the upper jugular chain on the left side, which was tender to touch. He diagnosed Plaintiff with adenopathy of the neck.  A CT scan of Plaintiff's neck, performed on April 2, 2003, reflected a complex, somewhat lobular appearing amorphous mass, extending from the level just below the base of the skull inferior to a level of the hyoid bone; with compression of the internal jugular vein.  On April 17, 2003, Dr. Rollins reported that Plaintiff's pathology report was read as diffuse large B-cell lymphoma.  Plaintiff was diagnosed with lymphadenopathy of the neck, left side, involving the anterior/posterior triangle (Tr. 148–61).

On April 28, 2003, Plaintiff was referred to Rafael Mayor, M.D., at Dothan Hematology and Oncology, who assessed her with diffuse large cell lymphoma, at least stage II (Tr. 219).  Plaintiff

began a treatment regimen with Dr. Mayor, which included chemotherapy and which continued through September 2003 (*see, e.g.*, Tr. 207).  On September 8, 2003, Dr. Mayor reported that Plaintiff was coming in for her sixth and final session of chemotherapy (Tr. 192).  He stated that Plaintiff's lymphoma had responded to therapy as documented by CT scans (*id.*).  On September 22, 2003, Dr. Mayor noted that Plaintiff had completed chemotherapy, she felt fine, and she was in complete remission from her lymphoma (Tr. 187).

On August 8, 2003, Plaintiff presented to Kris Lewandowski, M.D., for a consultative physical examination.  Dr. Lewandowski reported that Plaintiff complained about back pain she had experienced over the past two years on a constant basis.  Plaintiff reported that her pain was in the lower back and radiated to the right leg.  She stated that she also had neck pain which was progressively worsening with activity.  Plaintiff reported that she had been diagnosed with lymphoma of the neck and was on chemotherapy, which caused her to feel weak.  She stated that she experienced generalized joint aches.  Dr. Lewandowski reported a past medical history significant for degenerative disc disease and fibromyalgia.  Physical examination of her upper and lower extremities revealed that her joints were not swollen, tender, or deformed.  The muscles were of normal strength and size bilaterally.  Neurological examination was normal, as were grip and manual dexterity.  Straight leg raising (SLR) was negative, and ROM was completely normal throughout her body and extremities.

Dr. Lewandowski reported that Plaintiff's physical examination did not reveal any abnormalities; in particular, he noted no significant neuromuscular or orthopedic impairments.  He stated that Plaintiff was being treated for lymphoma which seemed to be in remission.  Dr. Lewandowski further stated that "today she appears to be comfortable and does not have functional impairment.  As side effect of chemotherapy she lost her hair and she wears a wig."  (Tr. 164–66).

On October 30, 2003, Plaintiff returned to Dr. Beranek and was examined for complaints of pain in her right shoulder, which was aggravated with any movement of the shoulder, especially with reaching overhead, lifting, or rolling on the shoulder at night.  Plaintiff also reported having some pain and crunching in the back of her knee cap.  Physical examination of the right shoulder revealed full ROM, negative drop sign, positive impingement sign, and positive lift off-sign with tenderness in the subacromial region.  Right knee examination revealed full ROM with crepitation in the

patellofemoral joint, but no medial or lateral joint line tenderness, and no swelling.  Dr. Beranek diagnosed Plaintiff with right shoulder impingement syndrome and right knee patellofemoral joint arthritis.  He treated her conservatively with Ambien to help her sleep and provided Bextra samples.

On May 6, 2004, Dr. Beranek stated that Plaintiff came to see him because of fibromyalgia, back pain, knee pain, and shoulder pain.  He reported that Plaintiff essentially was being seen for chronic pain management of these ailments.  Dr. Beranek reported that lumbar spine examination was consistent with degenerative disc disease in that Plaintiff had marked loss of any rotational or lateral bending.  She also had some limitations with flexion and extension.  Plaintiff was continued on medications (Tr. 223–46).

By letter dated May 6, 2004, Dr. Beranek stated that Plaintiff had been followed in his clinic for a number of years.  He opined that, "[Plaintiff] has intermittent fibromyalgia, low back pain secondary to degenerative disc disease, shoulder tendonitis, and [] recurrent knee pain.  I would consider her to be permanently disabled for these ailments.  She is not a candidate for any job that requires any prolonged standing, sitting or walking." (*id.*).

On September 9, 2004, Plaintiff presented to Dr. Beranek complaining of severe pain in her right shoulder and right elbow, and requesting and receiving injections for the pain (Tr. 223).  Dr. Beranek stated that Plaintiff was doing home therapy as well as physical therapy.  An examination of Plaintiff's right shoulder revealed full ROM, negative drop sign, positive impingement sign, positive lift-off sign, and tenderness in the subacromial area (*id.*).  Examination of Plaintiff's right elbow revealed exquisite tenderness over the lateral epicondyle, full ROM, and negative Tinel's (*id.*).  Plaintiff was diagnosed with right shoulder impingement syndrome and right elbow lateral epicondylitis.  Dr. Beranek stated that he would continue Plaintiff's medical therapy and physical therapy and see her back as needed (*id.*).  Plaintiff returned on October 18, 2004, complaining of pain in her low back, right shoulder, and right elbow, and requesting "medication and/or an injection" (Tr. 250).  Dr. Beranek stated that examination of Plaintiff's right shoulder revealed full ROM, negative drop sign, negative impingement, and tenderness in the subacromial area that was "not severe" (Tr. 250).  Examination of the right elbow revealed full flexion and extension with minimal tenderness over the lateral epicondyle.  Finally, a lumbar spine examination revealed

decreased ROM with diffuse tenderness in the lumbar region and negative SLR testing (*id.*).  Dr.

Beranek recommended physical therapy and modification of Plaintiff's activity (*id.*).

On October 26, 2004, Plaintiff underwent an epidural steroid injection at Flowers Hospital

Pain Clinic (Flowers) in an attempt to decrease her back pain (Tr. 297).

Plaintiff returned to Dr. Rollins on November 17, 2004, complaining of headaches, and on

December 6, 2004, complaining of right posterior neck pain (Tr. 254–55).  Dr. Rollins' impression

was muscle contraction pain of the neck (Tr. 254).

On December 16, 2004, Plaintiff presented to Paul H. Chan, M.D., as a new patient, and with

complaints associated with fibromyalgia, chronic back pain, and tension headaches located in the

back of her head involving her shoulder (Tr. 328).  Dr. Chan noted that Plaintiff had recently been

treated by Dr. Rollins for sinusitis, but it had "since resolved" (*id.*).  Plaintiff's physical examination

was basically normal (Tr. 328–29).  Her extremities showed good ROM and no edema (Tr. 329).

Neurologically, she was alert, awake, and "otherwise non-focal" (*id.*).  Plaintiff's diagnoses included

fibromyalgia and mild hyperlipidemia, for which dietary restriction and increased exercise were

recommended (*id.*).

On December 27, 2004, Plaintiff returned to Flowers, this time complaining of pain in her

lower back radiating down her right hip and leg (Tr. 285).  She noted that her previous epidural had

helped for about four weeks and then the pain worsened (*id.*).  Plaintiff underwent a second lumbar

epidural steroid injection (*id.*).  Plaintiff returned on April 3, 2005, with the same complaint and

rated her pain as an "8" (Tr. 263).  She described the pain as acute and radiating, and she noted that

her back pain was exacerbated by movement and relieved by remaining still (Tr. 261).  On April 6,

2005, Plaintiff was administered a right SI joint injection at Flowers (Tr. 274).

On April 1, 2005, Plaintiff returned to Dr. Chan with continued complaints of back pain (Tr.

324).  Plaintiff reported experiencing a lot of problems with back pain, and Dr. Chan noted that she

seemed to be "slightly off midline to the right" (*id.*).  Plaintiff was directed to return in three months

(*id.*).

Plaintiff returned to Dr. Beranek on April 19, 2005.  An examination revealed her to be

healthy appearing for her age.  She had decreased flexion and extension, and decreased rotational

and lateral bending of her spine with diffuse tenderness and some muscle spasms.  Plaintiff was

diagnosed with fibromyalgia and low back pain with probable degenerative disc disease.  Dr. Beranek gave her an injection and refilled her medications (Tr. 333–36).  On August 17, 2005, Dr. Beranek saw Plaintiff again and noted that she was controlling her pain with modified activity (Tr. 332).  A physical examination revealed multiple trigger point tenderness in the upper and lower torso, and decreased flexion, extension, and rotational and lateral bending of the lumbar spine.  Dr. Beranek's impression remained fibromyalgia with lumbar degenerative disc disease, and he recommended continued pain management (*id.*).

On September 1, 2005, Plaintiff presented to Robert P. Albares, M.D., with complaints of abdominal pain, constipation, and diarrhea (Tr. 342).  Dr. Albares' impression included lower right quadrant pain, alternating constipation and diarrhea, dyspepsia, and arthritis (*id.*).  Plaintiff was prescribed medications (Tr. 343).

On September 12, 2005, William Beckett, M.D., examined Plaintiff for complaints of right lower quadrant abdominal pain.  He identified no acute abnormalities after reviewing the results of CT's performed on Plaintiff's abdomen and pelvis (Tr. 338–39).

Dr. Chan examined Plaintiff again on October 18, 2005, and reported that Plaintiff had complaints of alternating constipation and diarrhea.  He stated that Plaintiff underwent a colonoscopy which showed some nondescript colitis, for which she was given medication.  Dr. Chan diagnosed Plaintiff with fibromyalgia, stable; large B-cell lymphoma in remission; hyperlipidemia; and degenerative joint disease (Tr. 347–48).

On November 8, 2005, Plaintiff presented to Bradley K. Helm, M.D., with complaints of right-sided pelvic pain (Tr. 357).  Dr. Helm noted that Plaintiff's pain had been evaluated by multiple orthopedic surgeons, and she recently had an extensive bowel evaluation (*id.*).  With the exception of some mild tenderness to deep palpation in the right lower quadrant, Plaintiff's abdominal examination was normal, as was her pelvic examination (*id.*).  Plaintiff was assessed with lower abdominal/pelvic pain, and a pelvic ultrasound was recommended to rule out any fluid collection or masses (*id.*).  Plaintiff was provided with forty Percocet tablets, but she was advised that Dr. Helms would not prescribe any further Percocet, and if Plaintiff wanted more, she would have to establish care with a new orthopedist or pain management physician (*id.*).  On November 18, 2005, following the ultrasound, Plaintiff returned to Dr. Helm (Tr. 356).  Dr. Helm indicated that

the ultrasound was negative, and he recommended that Plaintiff seek any further treatment from a pain management specialist (*id.*).

On August 7, 2006, Plaintiff presented to David H. Arnold, M.D., with a lesion on her right hand, which was removed (Tr. 376). Plaintiff reported her history of lumbar disc disease and also reported a recent increase in pain (Tr. 375). Plaintiff was prescribed Oxycodone three times daily (Tr. 376).

On August 8 and 17, 2006, Plaintiff reported to the Southeast Pain Management Center (Tr. 374, 370). On her first visit she received bilateral trigger point injections (Tr. 374). At her next visit, she reported numbness and weakness associated with her pain (Tr. 370). A physical examination of Plaintiff's lumbar spine revealed tenderness, pain on active and passive ROM, and pain on palpation and heat (Tr. 372). Plaintiff was administered injections for pain (*id.*).

V.     DISCUSSION

Plaintiff contends the ALJ erred in failing to find her fibromyalgia a "severe" impairment, erred in rejecting the medical opinions of Dr. Beranek, and erred in posing hypothetical questions to the VE because the questions did not contain all of Plaintiff's limitations (Doc. 9 at 20–21).

A.     Fibromyalgia

At step two of the sequential evaluation the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). The burden at this step is on the claimant. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
> (a) Non-severe impairment(s).    An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include —
>> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>> (2) Capacities for seeing, hearing, and speaking;
>> (3) Understanding, carrying out, and remembering simple instructions;
>> (4) Use of judgment;
>> (5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521. The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether a medical impairment is severe. The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In Brady v. Heckler, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that:

> [s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). It is not for the reviewing court to say that a plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue, and the ALJ's findings must be supported by substantial evidence.

In the instant case, the ALJ's written decision begins by explaining the sequential evaluation, including the analysis at step two (*see* Tr. 17). Next, the ALJ determines that some of Plaintiff's

impairments are "severe," but not her fibromyalgia[3] (Tr. 18).   He then summarizes Plaintiff's testimony and her allegation of disability based, in part, on fibromyalgia (*see* Tr. 18–19, 23).   He also summarizes the medical evidence of record, and within that discussion, notes Plaintiff's fibromyalgia as diagnosed by Dr. Beranek[4] (Tr. 21) and as acknowledged by Dr. Lewandowski (Tr. 20).   Although not explicitly stated, the ALJ then appears to discount the severity of Plaintiff's fibromyalgia based on six (6) general reasons:  the unremarkable physical examination performed by Dr. Lewandowski, Dr. Mayor's report that Plaintiff felt fine and her condition was stable, physical examinations by Dr. Beranek, normal CT scans of the abdominal area, Dr. Chan's report that Plaintiff's fibromyalgia was stable, and Plaintiff's daily activities (Tr. 23).

Initially, the court reiterates that the ALJ did not provide any detailed discussion regarding Plaintiff's fibromyalgia (notably, he failed to specifically state that he found Plaintiff's fibromyalgia non-severe, and he failed to clearly articulate the reason(s) for his finding), making this court's review of his decision particularly difficult.[5]  Moreover, most of the reasons apparently provided by the ALJ for finding Plaintiff's fibromyalgia non-severe are erroneous.  For example, the ALJ in large part notes that there are no objective findings corroborating the disease.  However, fibromyalgia often lacks medical or laboratory signs and is generally diagnosed mostly on an individual's described symptoms.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  Thus, the Seventh Circuit has held that requiring positive laboratory findings is error in cases of this nature.  Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996) (ALJ erred in finding claimant non-disabled because of lack of positive laboratory tests) (cited approvingly in Stewart v. Apfel, 245 F.3d 793 (11th Cir. 2001) (table), 2000 U.S. App. LEXIS 33214 (unpublished opinion)).  In Stewart, the court reviewed medical research on fibromyalgia, noting that it often lacks medical or laboratory signs, is generally diagnosed mostly on an individual's described symptoms, and its hallmark is a lack of objective

---

[3]Although the ALJ did not explicitly state that he found Plaintiff's fibromyalgia non-severe, the finding is implicit in the decision because fibromyalgia is not included with the listing of impairments found to be severe.

[4]The ALJ noted that Plaintiff was being treated by Dr. Beranek for back, knee, and shoulder pain, as well as fibromyalgia, and that Plaintiff was "essentially [] being seen for chronic pain management of these ailments" (Tr. 21).

[5]The Commissioner acknowledges that the "ALJ did not evaluate Plaintiff's fibromyalgia in great detail," but nevertheless contends that the analysis is sufficient (Doc. 10 at 4–5).

evidence.  Therefore, the ALJ's determination that a fibromyalgia claimant's testimony was incredible, based on the lack of objective evidence documenting the impairment, was reversed. Stewart, 245 F.3d at 793, 2000 U.S. App. LEXIS 33214, at *9, n.4.  *See also* Moore, 405 F.3d at 1211 (reiterating the impropriety of focusing on the absence of objective findings corroborating claims of the impairment).

Other Circuits that have considered the issue have found that fibromyalgia is a disease that can serve as the basis for a medically determinable impairment, even without positive laboratory findings.  *See, e.g.*, Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); Preston v. Secretary of Health & Human Servs., 854 F.2d 815, 817–18 (6th Cir. 1988) ("Fibrositis [now fibromyalgia] causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances," and diagnosis involves testing for focal tender points.)  Indeed, the Commissioner has instructed that in cases of chronic fatigue syndrome, a condition that, like fibromyalgia, is based largely on self-reported symptoms, "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points" is an example of a medical sign that establishes the existence of a medically determinable impairment.  Social Security Ruling 99-2p, 1999 WL 271569 (1999).

Thus, the ALJ's findings that Dr. Lewandowski's and Dr. Beranek's physical examinations were normal, and abdominal CT scans were normal, do nothing to refute the existence or severity of Plaintiff's fibromyalgia, as it generally is unaccompanied by objective medical findings. Moreover, the ALJ's finding that Dr. Mayor noted that Plaintiff felt fine and her condition was stable, also cannot serve to refute the existence or severity of Plaintiff's fibromyalgia, as Dr. Mayor treated Plaintiff for lymphoma, and Dr. Mayor's comments were made in the context of that treatment.  Furthermore, Dr. Chan's opinion that Plaintiff's condition was stable, may be an equally insufficient reason because stability does not mean "painless" or "non-disabling"; it means only that Plaintiff's condition was apparently not worsening in Dr. Chan's opinion.  However, to the extent the ALJ meant that Plaintiff's condition was being controlled by medication, his reason may have been proper.  *See* Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition

that can reasonably be remedied either by surgery, treatment, or medication is not disabling.")
(citation omitted).

Thus, the only remaining reason that clearly supports the ALJ's finding that Plaintiff's
fibromyalgia was non-severe, was his observation that Plaintiff's daily activities are inconsistent
with a truly "severe" fibromyalgia diagnosis.   While there is arguably enough evidence in the record
to support the ALJ's "non-severe" finding based on the extensive nature of Plaintiff's daily activities
alone (and possibly the fact that her condition was well controlled with medication), the ALJ's
opinion does not build an accurate and logical bridge between the evidence and the result, *see* Green
v. Shalala, 51 F.3d 96, 100–01 (7th Cir.1995); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994);
Zblewski v. Schweiker, 732 F.2d 75, 78–79 (7th Cir.1984); Cline v. Sullivan, 939 F.2d 560, 563–69
(8th Cir.1991), and the undersigned is not permitted to substitute her judgment for that of the
Commissioner.   As previously noted, it is not for the reviewing court to say that Plaintiff's
fibromyalgia is or is not trivial, only that the ALJ must properly justify his finding on that issue, and
the ALJ's findings must be supported by substantial evidence.   The ALJ failed to properly articulate
and justify his findings here.

In Social Security cases, the role of this court is to determine whether the law has been
properly applied and whether substantial evidence supports the Commissioner's findings, not to find
facts. Because of this limited role, the general rule is to reverse and remand for additional
proceedings when errors occur. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.1993)
(referring to general practice); Holt v. Sullivan, 921 F.2d 1221, 1223–24 (11th Cir.1991).   A case
may be remanded for an award of disability benefits, however, where the Commissioner has already
considered the essential evidence and it is clear that the cumulative effect of the evidence establishes
disability without any doubt.   Davis, 985 F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636
(11th Cir. 1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight
of the evidence, Congress has empowered the courts to modify or reverse the decision with or
without remanding the case for a rehearing); Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir.
1991) ("The record . . . is fully developed and there is no need to remand for additional evidence.");
Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216–17 (11th Cir. 1991); (finding that improperly

refuted testimony of a treating physician must be accepted as true and remanding "with directions to enter a finding of total disability").

In the instant case, the court certainly cannot conclude that disability has been established without a doubt.  Indeed, even if Plaintiff's fibromyalgia was found to be "severe," the evidence suggests that it was not disabling, but that decision is not for this court to make.  Thus, the appropriate remedy is to reverse and remand this action for additional proceedings.  Upon remand, Plaintiff's fibromyalgia must be reconsidered, and in the event it is again found to be non-severe, the reasons for that finding must be clearly articulated and must be supported by substantial evidence.  Similarly, if Plaintiff's fibromyalgia is found to be severe but non-disabling, the ALJ must properly justify his findings on those issues, and the findings must be supported by substantial evidence.

B.      The Opinions of Dr. Beranek

Plaintiff argues that the ALJ erred because he gave improper weight to the opinions of Dr. Beranek, a treating physician (Doc. 9 at 22–25).  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis, 125 F.3d at 1439–41; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Plaintiff was treated by Dr. Beranek during the course of the relevant period (i.e., after March 28, 2003, the alleged onset of Plaintiff's disability) (Tr. 223–51, 330–36, 344–46).  On May 6, 2004, Dr. Beranek stated that Plaintiff had "intermittent fibromyalgia," lower back pain due to degenerative disc disease, shoulder tendinitis and recurrent knee pain, and due to these impairments,

Plaintiff was permanently disabled and was not a candidate for any job that requires an ability to perform "prolonged" standing, sitting, or walking (Tr. 227).

The ALJ found that Dr. Beranek's opinion was not supported by the objective evidence and was inconsistent with Plaintiff's own testimony (Tr. 21).  The ALJ also found that the opinion was not supported by the contemporaneous treatment notes or the remainder of the evidence of record (Tr. 24).  For example, the medical records show, as noted by the ALJ (Tr. 23), that Plaintiff was basically treated conservatively.  In April 2005 Plaintiff had an injection and medication refill (Tr. 335).  In August 2005 Dr. Beranek said, in a statement which supports the ALJ's characterization of the care, "I recommend continued pain management and conservative treatment." (Tr. 332).  The Eleventh Circuit has held that allegations of disabling pain may be discounted because of inconsistencies such as conservative medical treatment.  *See* Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).  The ALJ also had noted that the report by Dr. Beranek was refuted by Plaintiff's own testimony (Tr. 21).  Indeed, Plaintiff testified that she sat for four hours per day, and stood or walked for two hours per day (Tr. 411).  This conflicts with Dr. Beranek's assessment that Plaintiff was unable to stand, sit, or walk for "prolonged" periods.

Moreover, to the extent Dr. Beranek found that Plaintiff was "permanently disabled," the ALJ properly discounted this opinion.  The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.  The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  *See also* 20 C.F.R. § 416.927(e).  Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Thus, the ALJ was free to discredit Dr. Beranek's opinion that Plaintiff was "permanently disabled."

However, the ALJ additionally noted that he was giving little weight to the opinion of Dr. Beranek "in light of the absence of objective findings" (Tr. 24). To the extent the ALJ discounted Dr. Beranek's fibromyalgia diagnosis (or its resulting limitations) based on the lack of accompanying objective findings, the ALJ erred for the reasons discussed *supra*. Moreover, the court notes that the record does contain objective medical evidence documenting some of Plaintiff's impairments. For example, an MRI documented degenerative disc disease (Tr. 235), and physical examinations revealed decreased flexion, extension, rotational bending, and lateral bending, accompanied with generalized tenderness and muscle spasm (*see, e.g.*, Tr. 230, 239). Additionally, Dr. Beranek documented multiple tender trigger point sites after a physical examination of Plaintiff on August 17, 2005 (Tr. 332). The American College of Rheumatology has developed diagnostic criteria by which a person can be affirmatively diagnosed with fibromyalgia if he or she has widespread pain in combination with tenderness in at least eleven of eighteen specific tender point sites. *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases, Questions and Answers About Fibromyalgia (1999), available at http://www.niams.nih.gov/Health_Info/ Fibromyalgia/default.asp (last visited January 7, 2008). Although Dr. Beranek did not note the number of tender point sites, he indicated that multiple tender points existed, which tends to support his fibromyalgia diagnosis.

Thus, again, only some of the ALJ reasons are proper and have substantial support in the record, and the undersigned cannot say whether the ALJ would have similarly rejected Dr. Beranek's opinions had he relied only on proper reasons. Therefore, an additional reason for remand exists in the instant case. Although, as noted by Plaintiff, where the Commissioner ignores or fails to properly refute the treating physician's opinions, they will be accepted true as a matter of law (Doc. 9 at 22–23 (citing MacGregor, 786 F.2d at 1050)), in the instant case the ALJ did not ignore Dr. Beranek's opinion, as was the case in MacGregor. *See* MacGregor, 786 F.2d at 1053 (noting that the treating physician's opinion was not discredited, and no finding was made as to the weight of the opinion). Here, the ALJ substantially complied with the Commissioner's regulations, but some of his reasons for discrediting the opinions of Dr. Beranek were improper. Therefore, remand is the appropriate remedy, and upon remand, the opinions of Dr. Beranek should be reconsidered.

If the opinions are again discredited, the reasons for doing so should be proper and supported by substantial evidence in the record.

        C.      Questioning of the Vocational Expert

      A supplemental hearing was held on January 12, 2006, for the purpose of eliciting vocational testimony to clarify certain issues about prior jobs that were performed by Plaintiff. A Vocational Expert (VE) identified Plaintiff's past relevant work as that of sewing machine operator, DOT #786.685.010, an unskilled job performed at the light exertional level (but sedentary as performed by Plaintiff), and cashier/checker, DOT #211.462-014, a semiskilled job performed at the light exertional level.

      The ALJ asked the VE if any of Plaintiff's past work could be performed by a hypothetical individual with Plaintiff's vocational profile and RFC (i.e., in an eight-hour workday, the person could sit or stand up to six hours, and lift up to twenty pounds occasionally and ten pounds frequently) (Tr. 429–30). The VE testified that such a hypothetical individual could perform both of Plaintiff's past jobs, as that work was performed by Plaintiff, based on her hearing testimony. Similarly, the VE testified that the person could also perform both jobs if the lifting was limited to ten pounds occasionally and the person would only have to stand three to four hours (Tr. 430). The VE also testified that, to perform either job, the person would have to work an eight-hour day, and missing two or three days of work per month would result in job dismissal (Tr. 431).

      Plaintiff contends the ALJ erred because the ALJ's hypothetical questions did not contain all of Plaintiff's limitations. As the court is well aware, a hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ is not required to include findings in the hypothetical that he has properly rejected as unsupported. See McSwain v. Bowen, 814 F.2d 617, 620 n.2 (11th Cir. 1987).

      Here, the court cannot determine whether the ALJ's questions were proper, as the ALJ discounted Plaintiff's subjective complaints and the opinions of Dr. Beranek, in part, on improper reasons, and whether his findings could otherwise be upheld (i.e., on the basis of the permissible reasons only) is not for this court to say. However, in light of the recommendation to remand this

case, the court need not decide this issue.  If a VE is again utilized in the consideration of Plaintiff's claim, the ALJ's questions should exclude only those limitations that have been properly rejected as unsupported.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this report and recommendation, and that the Clerk be directed to close the file.

At Pensacola, Florida this 19th day of February 2008.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**